Greetings, Your Honor. I'm a little dyslexic, so bear with me a little bit. My claim falls within the Title 4-2 U.S.C. 1981 and 1983. It was overlooked by trial court regarding selective treatment and equal protection rights. The New Rochelle Police Department showed harsh discriminatory practice in its application of the New Rochelle Municipal Code 316 and its subsequential amendment version date October 16. I own and operate Avalon Towing. That's my business name. I've had it for 18 years. This has hurt my business terribly when they implement a law like this. The City of New Rochelle Council amended 2012 Municipal Code 316 by Order No.-1622012. Such order to amend to- that that might be terrible. But we can only act if there is evidence that they did that for racial grounds. So what I'd like to hear is what evidence that this law 316, which may be a stupid law or a nasty law, but was passed because they wanted to discriminate against you on racial grounds. Because otherwise we may agree with you, and yet as a federal court we may be stuck. All right. Well, all I can say is I run a private property towing company. And the City of New Rochelle has hired Safeway Towing to do the same work, the same thing I do, but the City of New Rochelle decides to let the Safeway Towing get $110 a boot, which additional charge is to put a stick on the window. They get $26. I get nothing. They also get $20 for storage. I get $5 for storage. They- every time that I get a- What is- all that is very disturbing, I can understand, from your point of view. But going back to Judge Calabresi's question, how can you help us- can you help us show how race is responsible? Okay. I'll show you. I can show you how to race, and I can be straight up. When I'm in a minority area and I'm booting and towing, the police don't come and harass me, pull me over, write me city codes. When I go into a predominantly white area, the police come up to me, they come and write me city codes, says I'm raping their children. So- and every time that's- like I say, a McDonald's lot is about an eye on the college. They come up there and 10, 12 cop cars come there every time. Or I'm down the street from the college at CVS lot, they come up there and harass me. Does that happen with the other towing company? No. How do we know that based on what we got in front of us? Well, in my report, we went back- I mean, in my lawsuit, we went back and we seen, had Safeway been written any city codes, opposed to my hundreds of something city codes, Safeway was written one city code, and that city code- I mean, three city codes in one day, and it was because the man was driving, I think drunk, hit a car, and did something else. And that was the only thing that we could find that Safeway had been written since the time Safeway has been doing business with City of New Rochelle for at least 35 years or more. Meanwhile, they've been- they've written me city codes for a penny. You're the only black-owned- I'm the only black-owned company. And every time I go- and they- and also, I've obtained a parking lot CVS that Safeway previously had. I put my signs up at the same place Safeway had their signs, so I didn't move it, I didn't do anything, I put it on top of the sign. Soon as I put it on top of the sign, the police came back- they came right back there immediately, as usual, and what they did to me was say, you can't work now. So, why can't I work? Because the sign's not posted right. And they write me city codes. Same thing goes with how the police come to me and says, well, I've been booting for years, since 2002. So, normally if I come in, I go boot a car. What they do to me is I boot a car, I call in, if I come in, I got five boots, I've done it for years. I call in the five boots, I notify the police department, the plate number, and everything. With this- so what they did, they used this new law to say, you only can call in one boot at a time. So, if I come and I got ten cars, they want me to call the boot in, hang up, wait until they pick the phone up, call it back in, hang up, wait until I put the phone up. Meanwhile, they come down just to see if I put another boot on, because if I don't put another boot on, some people can come back. So, if I come, I know all my life I just put the boots all on the car, call in the boots, and that's that. Well, then they allowed me to call in the boots, but then after I call in the boots, they come back to me and say, we're writing you city codes, because you didn't call and hang up each time. So, they accept the call, but I'll get city codes written. And it kept me tied up in court for the last ten, twelve years. I might have been in court 400 times just writing me city codes, writing me city codes for charging tax. They made the boot fee. The police department, I tried, they made the boot for $15. I wanted to amend it to bring it back to $65, what it was normally was. The police made an amendment and asked for me to, and asked to get ready for the boot. To get rid of the boot, so if they got rid of the boot, they would get rid of me. Then they came back with an amendment for $25, and I finally got it back to $45, still not where it should be. But, and then I had, in my also report, I had where one cop called me racial numbers and racial names and said, if I want to be a police officer, I should want to school to be a police officer. It's in my report, too, that he had racial stuff to say to me because I was booting on private property, and I was booting a car that was in a handicap, and he got mad and says, you shouldn't, if you want to be a police officer, you should be a police officer, and he called me racial names. That's in the report, too. NCO? NCO, yeah. In there. And it's, and I mean, it's ten, twenty, twenty, twenty years ago with 30 cop cars. It's ridiculous. And nobody's even there for the boot. Like, the people that got their cars booted, they're not even at, they're not even on the scene, and you got all these cop cars with all kinds of lights because I call in the boot. Another time, the, I call in the boot, and then they said, so they don't like it, so I call in the boot, they said, now they never said nothing. This one, this one night, this one night, they said, this is the new rule, Angelo. They want to use this law here, but the wording is the same. It says notify immediately. But they're going to use this new law that's actually under the color of a law because when they adopted this law, they did an order, and they have to, they have to, they have to notify the Secretary of State within 45 days to file a local law filing. They did not, they failed to do that. So everything that they've been forcing me, making me have a license, making me have to have $2 million insurance, giving me this hardship, which this $2 million insurance, I never used to have to have, and meanwhile, Safeway has a $2 million insurance, but look at the difference that they get to provide that, and now I'm booting cars. I've got to have a $2 million to boot a car, and they told me in order to get the license, I have to get a yard that I'm not even going to boot a car to. Mr. Williams, you will have two minutes in rebuttal. Okay. Thank you. Thank you. Stay there, stay there. You'll be coming back after. Good morning, Your Honors. My name is Lalit Lumba. I represent the appellees. The, just a couple of comments with respect to Mr., some statements that Mr. Williams made. There was nothing in the record about differential treatment between white neighborhoods or minority neighborhoods in New Rochelle. There's nothing in the record about him receiving 100s or more of four specific incidents, and of those four, he received a citation on one of them. There's nothing in the record that the New Rochelle Police Department... What about the deposition? The plaintiff testified at the deposition that a police officer used a racial slur against him in an interaction in March, and that was specific March, in March of 2013. Right. That refers to the incident on March 3rd of 2013. That's Sergeant Inzio. According to the plaintiff, he called him, referred to his hair as having an appy hair. That was the expression that is alleged to have used. So the district court examined that incident against the three different claims that Mr. Williams pled and pursued at the district court level, and, Your Honor, he was represented by counsel below. Those three claims were selective enforcement under the Equal Protection Clause, a Class of 1 claim under the Equal Protection Clause, and a Section 1981 claim. So with regard to the selective enforcement claim, there was no evidence that Sergeant Inzio had treated Mr. Williams any different from a comparator, a company that was reasonably – sorry, similarly situated to him. With respect to the Class of 1 claim, that was dismissed for the same basis. On the Section 1981 claim, what the court said was that there was no evidence that Sergeant Inzio had enforced the booting law in a racially discriminatory manner. The court did address the – The question is, here you have a law that is clearly favoring, and it's enforcement, but the law itself is clearly favoring a particular company, which is a white company, and you have one African-American company. Is it enough that some police make racial claims that are racial statements to that company to allow an inference that this law was there and enforced in a way because in New Rochelle there is racial discrimination? That's the question. No, Your Honor. We have – it's a law that favors one company that happens all the time, and it may be stupid and nasty, but is there enough evidence to say that this was in this context because of race when we do have one racial set of statements? Your Honor, the answer is no. The single isolated remark that Mr. Williams claims to have been made is not sufficient to raise an inference of racial discrimination. The court should have clear evidence that the booting law had been violated. There was evidence of wrongdoing of that part, but that doesn't justify a racist statement. And the question is, does that statement bespeak a racist attitude? Should more be looked at from that point of view? That's what I want to know. Your Honor, I would answer that question no, because in the incident in question, there was clear evidence that Mr. Williams's company had violated the law. So this alleged single utterance is not connected to the enforcement of the law. He violated the law in that specific incident, and it was clearly – I mean, it was undisputed in the court below that there was a violation. So now Mr. Williams claims that Sergeant Inzio uttered that remark. Sergeant Inzio denies it. Of course, for these purposes, we assume that he said it. Absolutely true. But that's a single isolated incident. A district judge properly held that that was not sufficient to raise an inference of discrimination, Your Honor. Let's see. I mean, unless the Court has any specific questions. Your Honor, I believe there's more than two towing companies. Also, I think something I want the Court to understand, the contract with Safeway that Mr. Williams referenced is a contract for Safeway to tow vehicles that are on public roads and public property. The booting business that Mr. Williams is engaged in is towing and booting vehicles that are parked on privately owned parking lots, you know, McDonald's, CVS, et cetera. So it's really comparing apples with oranges to discuss about, for example, he mentioned the rates that Safeway earns. That's a different scenario because that's for towing and booting on public highways. The law in question regulates towing and booting on privately owned property. May I just ask, is it your argument that if a racist statement is made, and we're assuming it's true that it was made, in a context which is not relevant to the claim that is being made, but is made by the same people who are doing the things that this party claims are being done, is your argument that that can never be evidence of racism in the enforcement of the law generally, or is your argument that in this context it was not enough to make the link? It's the latter, Your Honor. There are some cases that were cited in the briefs that talk about repeatedly using racial comments. Repeatedly is another question about whether it is enough. My question is, just assume for a moment that that is a racist comment, but how much do we ask to make a link from an individual comment in a particular situation to a general attitude in a town? I think you need to ask for more than a single alleged comment. And also, Your Honor, as I said before, when you have a situation where there's a clear violation of the statute, I think that the alleged use of an isolated racial incident has less of an impact than if there was a question as to whether the statute had been violated and the officer came in and cited Mr. Williams while using an alleged racial incident, or excuse me, alleged racial remark. Yes. Okay. Your Honors, I'm out of time. If you have any specific questions, I would be happy to address them. Otherwise, we'll be addressed on our submissions. Thank you. Thank you. Mr. Williams, you'll have two minutes. Okay. Your Honor, I've never addressed the court, the local court. I did not agree to say, agree for what the local court did. They did it without my permission. This stuff happened. It was going on two or three years. I knew that I had them in the right, so I wanted to go to trial. Each item that you see on there, I did not, I wanted to go to trial. They kept postponing it, kept postponing it because I knew I had them through the law. So my lawyer, Russell Smith, called me and says, well, could you just sign the paper? I got emails and everything. Sign the paper. I said, nope, nope. I'm going to beat on the law because they're not going to make me call in one more boot at a time. And a lot of times I have to win. So I have to win. I have to win. I never... Mr. Williams, the Safeway, its towing is on public roads and your towing is on private? Right. It's true. But why I'm raised that question is they still make me pay the same fee to operate a business, $2 million fee, which is ridiculous for me to boot a car. But you want, but you, so I went to the city council twice to get equal benefits of towing because it cost me the same to run my business as theirs and the city council turned me down twice. On that note. Second of all, with Enzo, no, I did not, I booted the car, the sticker was in the car. Enzo, the cop Enzo knew the doctor that worked in the building and then the doctor came out while I was there and put the sticker in the car. That didn't mean that I was wrong. I was in my right. And that's what happened. Now, my lawyer, that's who I fired, he did something, but he wanted me to do some electronic things. As of today, it had never been done and I criticized him and I fired him. And I also went to the local court and told them I did not sign for that because I had the law behind me. And so they kept postposing everything and they write another city code and then it says all the trials are going to be on the same day. It was impossible. It had got to, I think I had about 37 trials in one day. From a span of three years. And I was like, I'm going to trial. They wouldn't go to trial. So when my wife was sick in Maryland, my wife was sick in Maryland, they said could you sign the paper? I said no. When I got back from Maryland, my wife was going through cancer, when I got back from Maryland, Russell said to me, oh, well, the court, I said what are you doing, Russell? I said I'm not paying nothing. Russell Smith was the lawyer. I said I'm not paying that because I didn't sign for that. There's no electronic nothing from me. You can see the e-mails and the e-mails just keep saying, nope, Russell. You can keep saying, why are you going to sign up electronics? I never did it. So the court is pulling fraud here because I never signed nothing because I knew I was in the right. Because the law said notify immediately. It doesn't say notify one at a time. And the only way they was going to stop harassing me is if I go to court and beat them in court because they witnessed nothing to say there. And I got correspondence, I even brung it from here. Correspondence from the city telling them, can you give me any, could you tell me where does it say in the law that I have to notify immediately? Because they write me city codes. I'm in court. They write me city codes. I didn't know if I could bring it because the law says I have videos that they've been produced on discovery and this is horrible what you would see on here, what they're doing to me. It shows, it tells you everything. Thank you very much. So if I could submit it in some kind of way, they already have it. They was given to this on discovery. Brian Powers had it on my discovery. They had this video and it's horrible. This is something that, phew, and I got it on video. And I was upset because the lawyer didn't put it in. Russell didn't put it in before so I was trying to go back to the court and when I was going to go back, I was going to enter a whole lot of other stuff. But this is devastating right here. It shows what they were doing, how many times they were doing it. And the same cops that I'm suing, back of my face every second, they won't even let me work. Thank you. And I'm not going to say, all I'm saying, there's no blacks there, it's just Caucasian men, get out of here, you're not going to work. Get up. I'm showing them a contract, you're still not going to work. Sorry. Can I submit this? We understand. You can give it to our clerk. Thank you. It's the same one that I just gave y'all. The same one, sir. Well, it was given to Brian Powell on discovery, before y'all signed on. Thank you, Mr. Williams. Thank you both for your arguments. The court will reserve decision. Thank you.